**Vernon C. FRANKLIN, Appellant,**

v.

**ENSERCH, INC., d/b/a Lone Star Gas Company, and Lone Star Gas Company of Texas, Inc. Appellees.**

**No. 07–97–0018–CV.**

Court of Appeals of Texas, Amarillo.

Feb. 6, 1998.

---

Law Offices of Holly Crampton, Holly Crampton, Wichita Falls, for appellant.

Law Offices of Thomas M. Callan, Thomas M. Callan, Dallas, Law Offices of Susan Laurea LaSalle, Susan Laurea LaSalle, Dallas, for appellees.

Before DODSON, QUINN and REAVIS, JJ.

QUINN, Justice.

Vernon C. Franklin (Franklin) appeals from a final judgment declaring that he take nothing against Enserch, Inc., d/b/a Lone Star Gas Company (Enserch).[1] His points of error number five. The first three concern the validity of the trial court's decision to enter a partial summary judgment upon the claims of sexual discrimination and intentional infliction of emotional distress. The fourth point involves the court's refusal to include various instructions in the charge, and the fifth, the court's decision to charge on law which was allegedly "not in effect at the time ... Appellant's cause of action arose...." We reverse in part and affirm in part.

### Background

The suit that instigated this appeal involved claims of discrimination and intentional infliction of emotional distress. Franklin, a male employee of Enserch, allegedly suffered from a physical disability. One of his legs was several inches shorter than the other. And though his official job description included performing physical labor in the gas fields, his duties had actually consisted of performing the tasks of an office clerk. He desired those duties, so he said, because they were better suited to his disability. Nevertheless, Franklin was purportedly told by his

supervisor that he would be moved to the field and that a woman would replace him. When asked why, the supervisor responded with the comment that " 'women are more efficient in the office.' " Thereafter, Enserch hired a female and assigned Franklin to the field to perform manual labor.

According to Franklin, he could not perform his new tasks given his physical condition and he informed others of this. Yet, no one paid attention. Instead, he was left to toil in the field without "accommodation," so he stated. Eventually, the circumstances preyed upon him, and he came to suffer "severe mental anguish and emotional distress." This allegedly forced him to take "disability" leave for six months, after which time, he was assigned a new job.

Once suit was filed, Enserch moved for summary judgment upon all of its employee's claims. After Franklin responded, the trial court granted the motion in part. That is, it entered a partial summary judgment in favor of Enserch upon the allegations of sexual discrimination and intentional infliction of emotional distress. The remaining claim, that of discrimination based on his disability, went to trial, and the jury found in favor of Enserch. The trial court subsequently entered a judgment upon that verdict.

### Points One, Two, and Three

Because Franklin's first three points concern the summary judgment, we address them together. The first involves the court's refusal to uphold his objections to the form of the summary judgment motion. Allegedly, the motion should have been struck because it did not "set out and identify the issues as required by Tex.R. Civ. P. 166a...." The second and third points pertain to whether Enserch established its entitlement to partial summary judgment as a matter of law. Franklin believes that material issues of fact

1. Named as appellees by Franklin are two entities, Enserch, Inc., d/b/a Lone Star Gas Company and Lone Star Gas Company of Texas, Inc. But, according to the record, the claims against Lone Star Gas Company, Inc. were nonsuited or dismissed by Franklin prior to trial. Furthermore, none of the instructions submitted to the jury involved allegations against Lone Star Gas Com-

pany of Texas, Inc., nor did either the final judgment or cost bond on appeal mention that corporation. Thus, we conclude that Enserch, Inc., d/b/a Lone Star Gas Company (as opposed to Lone Star Gas Company of Texas, Inc.) is the only appellee, despite Franklin naming both in the style of the appeal.

existed which pretermitted granting of the motion *in toto.*

### a. Form of the Summary Judgment Motion

According to Texas Rule of Civil Procedure 166a, the summary judgment motion must itself state the specific grounds on which judgment is sought. TEX.R. CIV. P. 166a(c). What this means is that the grounds must be not only expressed in the motion, *Sysco Food Servs., Inc. v. Trapnell,* 890 S.W.2d 796, 805 (Tex.1994); *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993), but also expressed in a manner which affords the non-movant fair notice of them. *Dear v. City of Irving,* 902 S.W.2d 731, 734–35 (Tex.App.—Austin 1995, writ denied). Yet, this does not mean that the movant must include within his motion a section expressly entitled "grounds for summary judgment" or something of like import (though that would be helpful). The grounds may actually be dispersed throughout the motion as long as they are within the confines of the motion. For instance, including them within a section which discusses applicable legal authorities would suffice. Indeed, one may even go so far as to mention them in a separate brief of authorities *if* that brief is incorporated into the motion. *Howell v. Murray Mortg. Co.,* 890 S.W.2d 78, 85 (Tex. App.—Amarillo 1994, writ denied).[2]

Here, the motion for summary judgment did not contain a section entitled "grounds." Yet, in paragraph "II," Enserch alleged that "[t]here is no genuine issue of material fact ... that ... Franklin has not been discriminated [against] in his employment ... because of sex or his disability." This was so, as described under paragraph "IV" of the very same motion, because 1) Franklin "never applied for the job" in question, 2) the woman who was hired "did not take ... Franklin's job," and 3) the woman

who was hired "filled ... the pipeline operator position left vacant when Ms. Markli quit."

Similarly, Enserch alleged in paragraph "II" that "[t]here is ... no genuine issue of material fact that [it] did not intentionally inflict emotional distress on ... Franklin as claimed." This was so, as explained under paragraph "VI" because "[n]one of the actions or inactions of any ... employees, agents or representatives [of the company] were extreme or outrageous to satisfy th[at] element of the tort."[3] Upon our reading these various paragraphs together, we find no violation of Rule 166a. The grounds for summary judgment were contained within the motion and were sufficiently specific to afford Franklin reasonable notice of them. That they may not have been placed within the confines of a single paragraph or otherwise highlighted mattered not. So, we overrule point one.

### b. Summary Judgment on Sex Discrimination

Next, Franklin argues that the court should have denied summary judgment because material issues of fact existed regarding the basis of his "removal from his clerical duties of twenty plus years." As previously mentioned, he was allegedly performing clerical duties when he was told by a supervisor that " 'women [were] more efficient in the office' " and replaced him with a woman. That, in his view, constituted evidence of discrimination based upon sex. We sustain point two.

Texas statute prohibits an employer from failing or refusing to hire an individual, discharging an individual, or discriminating "in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment" because of the individual's race, color, disabili-

---

2. But, we caution against movants playing a game of hide and seek. Grounds that are hidden, nebulous, ambiguous or the like invite the trial court to reject the motion as insufficiently specific. So we reiterate that the better practice would be to expressly itemize the grounds in clear terms under one section of the motion.

3. Enserch also expounded upon the reasons it thought it was entitled to judgment upon Franklin's claim that he was discriminated against because of his disability. But, because the trial court refused summary judgment on that claim, we need not determine if the grounds purportedly defeating that claim were sufficiently expressed or specific.

ty, religion, sex, national origin, or age. TEX. LAB.CODE ANN. § 21.051(1) (Vernon 1996). In reading section 21.051 it is important to note that the use of the term "individual" is neutral. It connotes no one of a particular race, gender, ethnicity, color, religion, age, or national origin. So, from this, we gather that it protects all whether they be black, white, hispanic, asian, jew, catholic, protestant, disabled, abled, female, male, etc. In other words, Franklin would not be prevented from claiming that he was discriminated against merely because he was, and is, a male.

▮ Similarly, we note that since section 21.051 literally prevents an employer from refusing to hire someone to a particular position simply because of his or her gender, it logically follows that it further prohibits an employer from transferring an employee from one position to another because of his or her gender. Discrimination based on sex is discrimination regardless of whether it occurs during the initial hiring or after the person is hired.

▮ Here, summary judgment evidence indicated that Franklin's duties consisted, for the most part, of performing clerical work. However, after his supervisor informed him that "women" in general were better suited to perform such tasks, he was replaced by a woman. At the very least, this created a material question of fact regarding whether Franklin was denied a term, condition, or privilege of employment merely because of his gender. Moreover, nothing presented by Enserch categorically dispelled this question of fact. At best, the evidence that Enserch was not replacing Franklin but merely filling a position of someone else who had quit (Ms. Markli), that Franklin's stint as clerk was merely temporary, or that he never applied for the job vacated by Markli, created additional factual disputes when compared to other summary judgment evidence of record. Again, Franklin attested 1) that his "full time" permanent duties since 1986 consisted of office clerical work, irrespective of his actual job title, 2) that he was told he would be moved to manual labor once a "woman" was hired to perform the clerical chores, and 3) that his supervisor directed him to tell the female applicants that "it was [Franklin's] job duties in clerical work that they were applying for." In other words, questions of fact existed about the actual nature of Franklin's permanent duties and whether the new hire was actually replacing the void left by Markli or displacing Franklin.[4]

Finally, we find Enserch's current argument that the supervisor's comment was a mere "stray remark" to carry little sway, given the record before us. More occurred than the "stray remark." Again, according to Franklin, in addition to uttering the stereotypic comment about women, the supervisor not only stated that Franklin would be reassigned after "the *woman they would hire*" was trained but also hired a woman. (Emphasis added). This depicts evidence of intent to discriminate plus fruition of that intent.

In effect, Enserch failed to negate all material questions of fact concerning whether Franklin was discriminated against on the basis of his sex. Thus, we have no choice but to sustain point two and hold that the entry of summary judgment upon the claim of sexual discrimination was improper.

### c. *Intentional Infliction of Emotional Distress*

Next, Franklin suggests that summary judgment upon his claim of intentional infliction of emotional distress was improper because a fact issue existed regarding the outrageousness of Enserch's conduct. We disagree and overrule the point.

---

4. Incidentally, if Franklin's true permanent duties encompassed solely office work, as he professed, then the contention that his failure to apply for the job would not legitimize the summary judgment. Simply put, a fact question still exists regarding whether the new hire was actually replacing Markli or Franklin. And, if the latter was actually being replaced, one can reasonably wonder why he would have to apply for a job which he already had. In other words, it could be possible for a jury to reject Enserch's proposition as a ruse to justify a possible act of discrimination.

One suing upon the theory of intentional infliction of emotional distress must prove that 1) the defendant acted intentionally or recklessly, 2) the defendant's conduct was extreme and outrageous, 3) the outrageous conduct caused the complainant emotional distress, and 4) the emotional distress suffered was severe. *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex.1993). While the first, second, and fourth elements mentioned are inherently factual and something the fact finder must resolve, the third element is not. Instead, whether one's conduct was sufficiently outrageous is a question of law. *Miller v. Galveston/Houston Diocese*, 911 S.W.2d 897, 899 (Tex.App.—Amarillo 1995, no writ). So, the trial court is to initially determine whether it arises to the level of reprehensibility encompassed by the tort. *Wornick Co. v. Casas*, 856 S.W.2d at 734. Additionally, the level of atrociousness to which it must arise is quite high. Simply put, it must exceed all possible bounds of decency and be utterly intolerable in a civilized community. *Miller v. Galveston/Houston Diocese*, 911 S.W.2d at 899.

Admittedly, the aforementioned standard is less than a bright line. Yet, it is the one with which we must deal. And, its parameters may be better understood by viewing the type of conduct which falls outside the realm of intolerable. For instance, when the employee is decrying actions in the workplace, like here, we see that the mere bump and grind of interacting with co-employees and management is not encompassed. More than petty insult, bickering, and indignity must be involved. *Id.; MacArthur v. University of Tex. Health Center*, 45 F.3d 890, 898 (5th Cir.1995). Similarly, the mere act of terminating an employee, *id.; Wornick Co. v. Casas*, 856 S.W.2d at 735 (stating that the employer's exercise of a legal right "cannot constitute outrageous conduct"), or the transferring of an employee to another department, even if coupled with insult and embarrassment, is not enough. *See Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143 (5th Cir.1991) (acknowledging that the employer must do more than transfer an employee, assign more work to that employee, or subject that employee to special reviews); *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 307 (5th Cir.1989) (holding that the employer's efforts to expose Dean to accusations of criminal conduct, not its continually transferring the employee or subjecting her to reviews, placed the situation "beyond the realm of an ordinary employment dispute and into the realm of an outrageous one").

Additionally, effort taken to force an employee to quit by creating an unpleasant workplace and subjecting him to more onerous tasks and reviews has been held less than intolerable activity. *Wilson v. Monarch Paper Co.*, 939 F.2d at 1143; *see Horton v. Montgomery Ward & Co.*, 827 S.W.2d 361, 367–70 (Tex.App.—San Antonio 1992, writ denied) (holding that placing rattle snake rattlers in an employee's desk, subjecting the employee to derogatory name calling and ostracism, defacing the employee's pictures, and refusing to discipline the employee's tormentors was not outrageous). Not even the mere violation of statutory prohibitions against discrimination in the workplace is enough. *Wilson v. Monarch Paper Co.*, 939 F.2d at 1143–44; *Sebesta v. Kent Elecs. Corp.*, 886 S.W.2d 459, 463–64 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (holding that the violation of the Juror Reemployment Act did not satisfy the requisite level of atrociousness). Something more is required, which something is not present here.

As indicated by the record, Franklin attested that 1) his job consisted of performing clerical work, 2) he was told that women perform office work better than men, 3) he was directed to hire a female to replace him, 4) he hired and trained his supposed replacement, 5) his supervisor asked him to perform manual labor, 6) he agreed to attempt such labor, 7) he eventually discovered that he could not perform the work due to an "obvious" physical disability, 8) his utterings about his inability to perform went unheeded by management, 9) management wanted him to continue so working, 10) management never asked him how he was doing or how he could be helped, 11) he took disability leave for six months, 12) he contemplated quitting, and 13) he eventually accepted another position with Enserch. Moreover, these were the acts which he likened to outrageous be-

havior. Yet, taken together, none are more egregious than those in *Sebesta v. Kent Elecs. Corp.* wherein the court refused to find outrageous the employer's yelling at the employee for performing jury duty, firing the employee in violation of the Juror Reemployment Act, mischaracterizing the termination as a simple resignation, violating its own internal policies, and escorting the employee off the premises via an "exit parade." *Id.* Nor are they any worse than those found tolerable in *MacArthur v. University of Tex. Health Center.* There, the employer made unfounded accusations against the employee, threatened to discharge her for scientific misconduct, and exercised control over the governing body which eventually suspended her. *MacArthur v. University of Tex. Health Center*, 45 F.3d at 898–99.

Simply put, the acts about which Franklin complains (assuming they are true) revealed a normal employment dispute. He wanted to perform clerical tasks while Enserch wanted him to do other things. Though some aspects of what Enserch supposedly said or did may have bordered on the discriminatory, we cannot say that its overall course of conduct was intolerable in a civilized community. It cannot be forgotten that private employers must be accorded leeway to manage as they see fit, even though employees may personally object to the decisions. *Miller v. Galveston/Houston Diocese*, 911 S.W.2d at 901. Consequently, we find nothing wrong with the trial court's decision to grant summary judgment in favor of Enserch upon the claim of intentional infliction of emotional distress.

### *Points Four and Five*

■ In his fourth and fifth points, Franklin decries various decisions undertaken by the court *vis-a-vis* the jury charge. Through the former, he posits that the court erred in failing to provide the jury with 1) the complete text of section 21.051 of the Texas Labor Code, 2) the definition of "reasonable accommodation," and 3) a statement that the purported discrimination need not be the sole cause of the adverse employment decision.

Through the latter point, he urges that error arose when the court instructed the jury upon a defense which the law did not recognize at the time his cause of action arose. We overrule both because they were improperly briefed.

■ Franklin did not comply with the applicable rules of appellate procedure. Those rules required him to provide us with such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue. TEX.R.APP. P. 74(f); *Howell v. Murray Mortg. Co.*, 890 S.W.2d at 81. This is not done by merely uttering brief conclusory statements, unsupported by any legal citation. *Rauscher Pierce Refsnes, Inc. v. Great Southwest Sav., F.A.*, 923 S.W.2d 112, 117 (Tex.App.—Houston [14th Dist.] 1996, no writ). Indeed, by presenting such attenuated, unsupported argument, a litigant waives his complaint. *Id.; Richard v. Cornerstone Constructors, Inc.*, 921 S.W.2d 465, 469 (Tex.App.—Houston [1st Dist.] 1996, writ denied); *Howell v. Murray Mortg. Co.*, 890 S.W.2d at 81.

Franklin's argument under points four and five consists of several abbreviated paragraphs which merely reiterate the respective point of error or its sub-part. No legal citation is mentioned, nor is attempt made to explain or develop the purported theory urged. Under these circumstances, we conclude that he waived the points.

Accordingly, that part of the final judgment and order granting partial summary judgment which purports to deny Franklin relief upon his claim of sex discrimination is reversed. In all other things, the final judgment and order granting partial summary judgment are affirmed.