Opinion issued August 4, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00718-CV

———————————

QB Investments, LLC, Appellant

V.

Certain
Underwriters at Lloyd’s, London, Appellee



 



 

On Appeal from the 270th District Court

Harris County, Texas



Trial Court Case No. 2009-44895

 



 

MEMORANDUM OPINION

This case
involves a first-party property insurance coverage dispute arising from the
denial of appellant QB Investments, LLC’s claim of loss for a November 2008
warehouse fire.  QB Investments appeals
from a final summary judgment in favor of appellee Certain Underwriters at
Lloyd’s, London.  QB Investments argues
that its summary judgment evidence raised a question of material fact as to
whether an endorsement requiring it to install and maintain a central fire
alarm was part of the policy when the fire occurred.  It further contends that Lloyd’s failed to
establish the applicability of the endorsement as a matter of law.  We affirm.

Background

          QB
Investments purchased property in Houston, Texas in October 2008.  It also obtained an insurance policy for the
period of October 28, 2008, to October 28, 2009, from Lloyd’s through the
insurer’s United States underwriting agent AVERCO.  Lloyd’s issued the policy binder on October
27.  The binder provided to QB
Investments includes the policy number, coverage limits, deductible amounts,
and some of the applicable endorsements and exclusions.  While a number of endorsements are
specifically set out, including the standard endorsement clause and an
electronic data endorsement, the binder states: “OTHER ENDORESEMENTS MAY
APPLY.”

The actual policy, which QB
Investments received at a later date, includes an endorsement not listed in the
binder.  The policy states that it
provides coverage for “specified causes of loss,” including fire
losses.  The policy also includes an
endorsement that requires QB Investments to maintain a fire alarm system and
limits any obligation Lloyd’s might have to pay for fire loss under certain
conditions.  Clause A of
the “Protective Safeguards” endorsement requires QB Investments, “[a]s a
condition of [coverage for fire loss], . . . to maintain [a Central
Station FIRE Alarm].”  Clause B further
provides that: 

[Lloyd’s] will not pay for
loss or damage caused by or resulting from fire if, prior to the fire, [QB
Investments]:

 

1.    
Knew of any suspension or impairment in any protective safeguard listed
in the Schedule above and failed to notify us of that fact; or

 

2.    
Failed to maintain any protective safeguard listed in the Schedule
above, and over which you had control, in complete working order.

 

          On
November 20, 2008, after the binder had issued but before QB Investments
received the actual policy, fire damaged a warehouse on the property.  It is undisputed that the central station fire
alarm was not installed at the time of the fire.

QB Investments claimed a loss under
the policy.  Lloyd’s denied the claim on
the grounds that the policy required QB Investments to maintain a central
station fire alarm on the property and that: (1) “QB [Investments] knew of
impairments . . . and failed to notify [Lloyd’s] of them,” and (2) “had
control over its own premises and equipment but failed to maintain a central
station fire alarm in ‘complete working order.’”

          After
its claim was denied, QB Investments sued Lloyd’s for breach of contract.  Lloyd’s moved for summary judgment, arguing
that it was entitled to deny coverage of the claim because QB Investments did
not perform a condition precedent under the policy by failing to maintain a
central station fire alarm as required in the “Protective Safeguards”
endorsement.  In response, QB Investments
argued that Lloyd’s was not entitled to summary judgment because the protective
safeguards endorsement was not listed in the binder, and therefore it was not
part of the policy in effect at the time of the fire.  QB Investments attached deposition testimony which
it argued created a fact issue about the applicability of the endorsement.  Alternatively, it also argued that Lloyd’s
had failed to conclusively establish the applicability of the endorsement.  In support of this position, it attached an
affidavit to establish that Lloyd’s had been notified through an agent that
there was no central station fire alarm and that QB Investments contracted with
a fire alarm installation company on October 29, 2009.

          After
considering the evidence submitted by the parties, the trial court granted
summary judgment in favor of Lloyd’s.  On
appeal, QB Investments contends that the trial court erred because a question
of material fact had been raised as to whether the protective safeguards
endorsement was part of the policy when the fire occurred and because Lloyd’s
failed to establish the applicability of the endorsement as a matter of law.

Analysis

          We review a trial court’s summary-judgment decision de novo.  Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  To prevail on summary
judgment, the movant has the burden of proving
that there is no genuine issue of material fact and that it is entitled to
judgment as a matter of law.  Nixon
v. Mr. Prop. Mgmt. Co.,
690 S.W.2d 546, 548 (Tex. 1985); see Tex. R. Civ. P. 166a(c).  A defendant is entitled to summary judgment
based on an affirmative defense if it conclusively proves all the essential
elements of the defense as a matter of law.  See, e.g., Cathey v. Booth, 900
S.W.2d 339, 341 (Tex. 1995).  In
deciding whether there is a disputed issue of material fact precluding
summary judgment,
we take as true evidence favorable to the nonmovant, indulging every reasonable
inference and resolving any doubts in its favor.  Provident Life & Accident Ins. Co. v.
Knott, 128 S.W.3d 211, 215
(Tex. 2003).  A matter is conclusively
established if reasonable people could not differ as to the conclusion to be
drawn from the evidence.  City of
Keller v. Wilson, 168
S.W.3d 802, 816 (Tex. 2005).

I.                 
The binder 

In its first issue, QB Investments argues that summary judgment was
improper because there are genuine issues of material fact “concern[ing]
whether or not the [protective safeguards fire alarm endorsement] was even part
of the binder.”  Relying on the Texas
Supreme Court’s decision in Ranger County
Mutual Insurance Co. v. Chrysler Credit Corp., 501 S.W.2d 295 (Tex. 1973),
QB Investments contends that the terms included in the binder are controlling
because the policy had not yet issued, and therefore Lloyd’s was precluded from
denying its claim.  Lloyd’s argues in
response that the terms and conditions of the actual policy are controlling and
that the binder is to be construed in accordance with the terms and conditions
of the standard form of policy in use by the insurer.  See id.
at 298 (“As long as a binder is in effect, the insured may look to the form of
the contemplated policy for coverage, duration, cancellation, and other
terms.”).

“An insurance binder is a contract
that provides insurance coverage pending the issuance of an original insurance
policy . . . .”  See Tex. Ins. Code Ann. § 549.001(2) (West
2009).  It is well established that coverage provided under a binder is
determined based on reference to the terms and conditions contained in the
standard form of policy in use by the insurer at the time the binder is
issued.  See id.  The party seeking to
enforce the policy must allege and prove that it is entitled to recover under
the terms of the policy.  Id. (citing Wann v. Metro. Life Ins. Co., 41 S.W.2d 50, 52 (Tex. Comm’n App.
1931, holding approved); Equitable
Assurance Soc’y of U.S. v. Nelson, 396 S.W.2d 517, 518 (Tex. Civ. App.—Fort
Worth 1965, no writ)).

In support of its position, Lloyd’s attached the following exhibits to
its motion for summary judgment: the affidavit of John J. Clark, the authorized
underwriting agent for Lloyd’s; a transcript from the deposition testimony of
James McNutt, QB Investment’s insurance agent; the transcript of Jo Nell
Salling’s deposition; a copy of the binder; and a copy of the policy issued to
QB Investments.  As discussed above, it
is undisputed that the policy actually contains the protective safeguards
endorsement, and while the endorsement is not specifically referenced in the
binder, the binder states that other endorsements may apply.  In his affidavit, Clark averred that the endorsement
was included in the actual policy, and despite its omission from the text of
the binder, it was always deemed included. 
He also stated that the protective safeguards endorsement “was among the
terms and conditions contained in the ordinary form of policy usually issued by
the underwriters at Lloyd’s,” and that “[t]he underwriters . . . would not have
issued a policy to QB Investments, LLC without [the endorsement]” because part
of the property was used for the storage and handling of chemicals.  Both McNutt and Salling also testified that
they knew that the endorsement would be included in the policy and they
understood that Lloyd’s would deny coverage for any fire loss if a central station
fire alarm were not installed and maintained by QB Investments.

In its response, QB Investments argued that there was conflicting
testimony regarding the protective safeguards endorsement.  In support of its motion, QB Investments
attached a transcript of the deposition of Leland Smith, corporate
representative for Lloyd’s.  Smith
testified that the binder should contain the endorsements listed in the
policy.  QB Investments contends that
this testimony conflicts with Clark’s statement that the binder need not
include all the endorsements listed in the policy.  While its response highlighted an apparent
conflict in the testimony of key witnesses, QB Investments failed to show that
the endorsement was not part of the standard policy used by Lloyd’s.  See
Ranger Cnty. Mut. Ins.Co, 501 S.W.2d at 298.  Accordingly, we hold that the protective
safeguards fire alarm endorsement was part of the policy when the fire occurred
and that Lloyd’s was not liable under the policy unless QB Investments
demonstrated that it complied with the terms of the endorsement.  QB Investments’s first issue is overruled.

II.              
Applicability of endorsement

In its second issue, QB Investments contends that Lloyd’s failed to
conclusively establish the applicability of the protective safeguards fire
alarm endorsement.  It argues that “the
evidence before this Court proves that the exclusion is inapplicable,” and
“there is at the very least, a fact issue, if the endorsement is deemed to be
part of the binder.”  The entire argument
presented by QB Investments is less than a page long, and it contains no
citation to legal authority.

While this
Court recognizes its obligation to construe the rules of appellate procedure
“reasonably, yet liberally, so that the right to appeal is not lost by imposing
requirements not absolutely necessary to effect the purpose[s] of the rule[s],”
Republic Underwriters, Insurance Co. v.
Mex-Tex, Inc., 150 S.W.3d 423, 427 (Tex. 2004) (quoting Verburgt v. Dorner, 959 S.W.2d 615, 616–17 (Tex. 1997) (internal quotation marks
omitted)), we are not required or permitted to assume the advocate’s
responsibility for developing arguments on appeal.  Jordan
v. Jefferson Cnty., 153 S.W.3d 670, 676 (Tex. App.—Amarillo 2004, pet.
denied); see also Tex. R. App. P. 38.9.  The Rules of Appellate Procedure require that
appellate briefs “contain a clear and concise argument for the contentions
made, with appropriate citations to authorities and to the record.”  Tex.
R. App. P. 38.1(i).  QB Investments
was required to provide us with a discussion of the relevant facts and
authorities relied upon as may be required to maintain the point at issue.  Tesoro Petroleum Corp. v. Nabors Drilling
USA, Inc., 106 S.W.3d 118, 128 (Tex.
App.—Houston [1st Dist.] 2002, pet. denied) (citing Franklin v. Enserch,
Inc., 961 S.W.2d 704, 711
(Tex. App.—Amarillo 1998, no pet.)). 
“This is not done by merely uttering brief conclusory statements,
unsupported by legal citation[].”  Id.  Accordingly,
we hold that QB Investments has inadequately briefed this issue
and, thus, waived it.  See Tex.
R. App. P. 38.1(i); see also Stephens v. Dolcefino, 126 S.W.3d 120,
129–30 (Tex. App.—Houston [1st Dist.] 2003), pet. denied, 181 S.W.3d 741 (Tex. 2005).

Conclusion

We affirm the judgment of the trial
court.

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel consists of Justices
Jennings, Bland, and Massengale.